1   Matthew R. Bainer, Esq. (SBN 220972)
    **THE BAINER LAW FIRM APC**
2   1999 Harrison St., Suite 1800
3   Oakland, California 94612
    Telephone:  (510) 922-1802
4   mbainer@bainerlawfirm.com
5   Attorneys for Plaintiffs
6
7
8                    **UNITED STATES DISTRICT COURT**
9                    **CENTRAL DISTRICT OF CALIFORNIA**
10
    MICHAEL STOCKBRIDGE and              Case No. 2:22−cv−04935−DMG−JC
11  XAVIER CASTRO, individually,
    and on behalf of other members of   **NOTICE OF UNOPPOSED MOTION**
12  the general public similarly        **AND UNOPPOSED MOTION FOR**
    situated, and as aggrieved          **FINAL APPROVAL OF CLASS**
13  employees pursuant to the Private   **ACTION SETTLEMENT;**
    Attorneys General Act ("PAGA"),     **MEMORANDUM OF POINTS AND**
14                                       **AUTHORITIES IN SUPPORT**
                   Plaintiffs,          **THEREOF**
15
          v.                            Date:      January 19, 2024
16                                       Time:      10:00 a.m.
    SKYWEST AIRLINES, INC., a           Judge:     Dolly M. Gee
17  Utah corporation; and DOES 1
    through 100, inclusive,
18
                   Defendants.
19
20
21
22
23
24
25
26
27
28

                                    MOTION FOR FINAL APPROVAL OF CLASS ACTION
                                                                      SETTLEMENT

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on January 19, 2024, at 10:00 a.m. or as soon thereafter as counsel may be heard in Courtroom 8C of the United States District Court for the Central District of California, located at 350 West 1st Street, Los Angeles, California 90012, Plaintiffs will, and hereby do, move this Court for an order granting final approval of class action settlement in the above-captioned matter.

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs respectfully move for entry of an order:

1.      Granting final approval of the terms of the proposed class action settlement described in the Joint Stipulation re: Class Action Settlement ("Stipulation") as fair, reasonable, and adequate to all Class Members;

2.      Finding that the Notice of Class Action Settlement distributed to the Class Members pursuant to the Court's order granting preliminary approval constituted the best practicable notice to all Class Members under the circumstances;

3.      Finally certifying the class for settlement purposes only;

4.      Directing that compensation to all Settlement Class Members be effected pursuant to the terms of the Stipulation;

5.      Approving the payment to the California Labor Workforce Development Agency ("LWDA") in the amount of seventy-five thousand dollars ($75,000.00);

6.      Approving the Claims Administrator's costs in the amount of nineteen thousand five hundred dollars ($19,500); and

7.      Entering final judgment in the action.

This Unopposed Motion is based on this Notice, the attached Memorandum of Points and Authorities, the accompanying declarations of Matthew Bainer and Kaylie O'Connor, and any exhibits thereto, the complete files and records of this

MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT

case, the Stipulation, and any other evidence or oral argument which may be considered by the Court at the time of the hearing.

DATED:  December 22, 2023          **THE BAINER LAW FIRM**

By:   /s/ Matthew R. Bainer
Matthew R. Bainer
Attorneys for Plaintiffs

MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

On September 15, 2023, this Court granted preliminary approval of the proposed class-action settlement between Plaintiffs Michael Stockbridge and Xavier Castro ("Plaintiffs") and Defendant SkyWest Airlines Inc. ("Defendant" or "SkyWest"). Plaintiffs now seeks an order granting final approval of the Joint Stipulation re: Class Action Settlement ("Stipulation").

If finally approved, the Settlement will create an all-inclusive, non-reversionary settlement fund in the amount of $3,999,999.00. The proposed Settlement will dispose of this action in its entirety as to the following class:

> All Flight Attendants who were "domiciled" at a California airport at any time from July 13, 2018, through the date of Preliminary Approval (September 15, 2023).

The proposed Settlement is fair, adequate, and reasonable. The Settlement provides substantial benefits to the Class Members when balanced with the strength of Plaintiffs' case and the risks and expense of further litigation. In addition, the Class Members' reaction to the Settlement has been overwhelmingly positive, as, to date, there have been **no** objections and **no** requests for exclusion. Additionally, the Settlement was reached through mediated arms-length negotiations, sufficient investigation and discovery allowed Class Counsel to act intelligently, and Class Counsel supports the Settlement as being in the best interests of the Class Members. Accordingly, Plaintiffs respectfully requests that this Court grant Plaintiffs' Motion for Final Approval of Class Action Settlement. Defendant does not oppose this Motion.

## II.    RELEVANT BACKGROUND

### A. Factual and Procedural Background

This case is the second iteration of the pursuit of these claims against SkyWest. The original case, *Wilson v. SkyWest*, Northern District of California

Case No. 3:19-cv-1491-VC, was filed in February of 2019, and was heavily litigated. Following the individual settlements reached for the Plaintiffs in that action, the claims brought therein were reasserted on behalf of the class, through the new class representatives named herein. This case involves California wage-and-hour claims against Defendant, a commercial air carrier. Plaintiffs' claims flow from the following nucleus of factual allegations:

- SkyWest did not consistently provide flight attendants with timely meal or rest breaks, as required under California Law;

- SkyWest did not consistently pay flight attendants for allegedly missed meal and rest breaks;

- SkyWest did not provide flight attendants with complete and accurate wage statements;

- SkyWest did not provide payment of all wages to flight attendants, including, but not limited to meal and rest period premium wages, within permissible time periods; and

- As a derivative result of the above allegations, SkyWest failed to pay all terminated employees the correct amount of wages earned and failed to provide accurate itemized wage statements.

Based on those factual issues, Plaintiffs brought suits against Defendant in 2021, alleging the following causes of action: (1) violations of California Labor Code §§ 226.7 and 512(a) (unpaid meal period premiums); (2) violations of California Labor Code § 226.7 (unpaid rest period premiums); (3) violations of California Labor Code §§ 201 and 202 (wages not timely paid upon termination); (4) violations of California Labor Code § 226(a) (non-compliant wage statements); (5) violations of California Business and Professions Code § 17200, *et seq* (unfair business practices); and (6) violations of Labor Code §§ 2698, et seq. ("PAGA").

Plaintiffs and Defendant reached a settlement (the "Settlement") of the above claims after lengthy negotiations, executing the Stipulation on or around August 2023. (Declaration of Matthew R. Bainer in Support of Plaintiffs' Motion

MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT

for Final Approval ("Bainer Decl.") ¶6; *see also* discussion *infra* Parts II.B.-C.)
On August 18, 2023, Plaintiffs moved for preliminary approval of the Settlement.
On September 15, 2023, the Court granted Plaintiffs' motion for preliminary
approval.

### B. Plaintiffs' Investigation of Their Claims and Class Claims

Plaintiffs actively investigated and conducted discovery in this and the
predecessor *Wilson* action in order to sufficiently and intelligently assess the
merits of their claims, individually and on behalf of the class, as well as evaluate
the risks of proceeding to trial, and the adequacy and fairness of the Settlement.
(Bainer Decl., ¶ 3-4.) In this Action, SkyWest responded to formal discovery and
produced tens of thousands of pages, in addition to the personnel and payroll
records for Plaintiffs. In anticipation of the parties' mediation session, Defendant
produced additional, significant discovery on an informal and privileged basis,
including data points related to the potential damages in this action, to allow a
meaningful discussion about resolving these claims at the mediation. Using this
information, Plaintiff's Counsel was able to determine the average hourly rate of
pay for Class Members, the total approximate number of Class Members who
worked during the Class Period, the total number of former employees during the
Class Period, and the maximum possible recovery for each claim. (Bainer Decl. ¶
3.)

But this case was essentially a continuation of the hard fought and identical
*Wilson* Action that was contentiously litigated for three years before this Action
was filed. Both parties served and responded to Special Interrogatories and
Requests for Production of documents, to which Defendant produced tens of
thousands of pages of relevant documents and data. Both Plaintiffs and
Defendant's Representatives were deposed. Defendant obtained an Expert Report,
and that Expert was also deposed. The Parties filed cross motions for summary
judgment and a motion for class certification were brought and ruled upon.

MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT

Plaintiffs' Counsel also performed an extensive independent investigation into the claims at issue, including (1) determining the suitability of the putative class representative through interviews, background investigations, and analyses of employment files and related records; (2) researching wage-and-hour class actions involving similar claims; (3) acquiring information regarding putative Class Members' potential claims, identifying additional witnesses, and obtaining documents in support of Plaintiff's eventual Motion for Class Certification; (4) obtaining and analyzing Defendant's wage-and-hour policies and procedures; (5) researching the latest case law developments bearing on the theories of liability; (6) researching settlements in similar cases; (7) preparing valuation analyses of claims; (8) participating in a full-day private mediation session and preparing related memoranda; (9) negotiating the terms of this Settlement; (10) finalizing the Stipulation of Settlement; and (11) drafting these preliminary approval papers. The document and data exchanges allowed Plaintiff's Counsel to assess the strengths and weaknesses of the claims against Defendant and the benefits of the proposed Settlement. (Bainer Decl. ¶ 4.)

**Arm's-Length Settlement Negotiations**

After exchanging documents and conducting preliminary settlement discussions, the parties attended a full day mediation with Hon. S. James Otero, who specializes in mediating employment disputes, including wage and hour class actions. At the conclusion of the mediation session, Judge Otero made a mediator's proposal which both sides ultimately accepted. The parties then negotiated the remaining details over the course of several weeks. At all times, the parties' negotiations were adversarial and non-collusive. The Settlement therefore constitutes a fair, adequate, and reasonable compromise of the claims at issue. (Bainer Decl. ¶ 5-6.)

**III.    THE SETTLEMENT**

**A. Class Definition**

The proposed class consists of all Flight Attendants who were "domiciled"

at a California airport at any time from July 13, 2018, through the date of Preliminary Approval (September 15, 2023). (*See*, Joint Stipulation of Class and Representative Action Settlement attached to Bainer Decl. as Exhibit "A", ¶3)

### B. <u>Settlement Terms</u>

Plaintiffs and Defendant have agreed to settle the underlying class claims in exchange for a Gross Settlement Amount of $3,999,999.  The Gross Settlement Amount includes (1) settlement payments to each Class Member who does not submit a request for exclusion ("Settlement Class Member"); (2) up to $1,333,333 in attorneys' fees; (3) reasonable litigation costs and expenses of 17,415.33; (4) Settlement Administration Expenses of $19,500; (5) Class Representative Enhancement Payments of $10,000 to each Representative Plaintiff; and (6) a payment of PAGA penalties of $100,000, of which $75,000 will be paid to the LWDA and $25,000 will be paid to each Settlement Class Member who does not submit a request for exclusion. (Bainer Decl., Ex. "A", ¶28(f))

To the extent there are any uncashed or undeliverable Settlement Payment checks more than 180 calendar days after issuance, such uncashed/undeliverable amounts will be transmitted to the California State Controller's Office for Unclaimed Property in the name of each Class Member who failed to cash their Settlement Payment check prior to the void date. (Bainer Decl., Ex. "A", ¶37)

Each Settlement Class Member's share of the Net Settlement Amount will be proportional to the number of weeks worked by each Class Member while working as a California-based Flight Attendant during the applicable time periods.  The Settlement Administrator will calculate the Individual Settlement Payments and Individual PAGA Payments as follows:

- Defendant will provide the Settlement Administrator an electronic database of all Class Members, including each Class Member's name, last known address, social security numbers, and dates based in California;

- The portion of the PAGA Payment distributed as Individual PAGA Payments shall be divided among all Class Members employed between January 24, 2021  and preliminary approval on a pro rata basis, based on the ratio of the

MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT

number of weeks worked by each Class Member while working as a California-based flight attendant from January 24, 2021 through the date of preliminary approval of this settlement to the total number of weeks worked by all Class Members while working as California-based flight attendants during this same time period;

- The portion of the Net Settlement Amount distributed as Individual Settlement Payments to Participating Class Members shall be calculated on a pro rata basis, based on the ratio of the number of weeks worked by each Participating Class Member while working as a California-based flight attendant from July 13, 2018 through the date of preliminary approval of this settlement to the total number of weeks worked by all Participating Class Members while working as California-based flight attendants during this same time period; and

- The individual Settlement Payments will be reduced by any required deductions for each Settlement Class Member as specifically set forth herein, including employee-side tax withholdings or deductions.

(Bainer Decl., Ex. "A", ¶28(h))

**The Release**

In exchange for the Class Settlement Amount, Plaintiffs and Class Members who do not opt out will release the Released Claims. The Released Claims include "all claims pursuant to California Labor Code sections 226 and 226.3 for the period between January 24, 2021 through the date of preliminary approval and all of the following remaining claims for the entire Class Period: any and all claims, rights, demands, liabilities, and causes of action of any kind, whether known or unknown, arising from the alleged violation of any provision of common law, California law and/or federal law which was or could have been raised in Plaintiffs' operative complaint based upon the factual allegations and issues set forth therein…." (Bainer Decl., Ex. "A", ¶39). Plaintiffs Stockbridge and Castro will additionally execute a General Release of Claims and Rights.

## IV.    CLASS NOTICE HAS BEEN EFFECTUATED AND COMPORTS WITH THE REQUIREMENTS OF DUE PROCESS AND RULE 23

Before the Court may grant final approval of a proposed class-action settlement, adequate notice of the settlement must be provided to the class members. Fed. R. Civ. P. 23(e)(1). Class members should be given "the best

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The notice may be by United States mail or other appropriate means. *Id.* The "best notice practicable" does not require receipt of actual notice by all class members in order to comport with both Rule 23 and the requirements of due process, but it often includes (as in this case) direct notice to class members who can be identified by regular mail. *See, e.g.*, *Burns v. Elrod*, 757 F.2d 151, 154 (7th Cir. 1985).

For a class certified under Rule 23(b)(3), class notice must "clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B). "Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard. *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (citations and quotations omitted).

The notice plan, as preliminarily approved by the Court on September 15, 2023 has been implemented by the Claims Administrator. The Claims Administrator received from Defendant a list containing each Class Member's full name, most recent mailing addresses, Social Security Numbers, and other relevant information needed to calculate settlement payments. (collectively, "Class Information"). (Declaration of Claims Administrator Kaylie O'Connor in Support of Plaintiffs' Motion for Final Approval ("Claims Administrator Decl.") ¶ 3.) The Claims Administrator received Class Information for 1,930 Settlement Class Members. (Claims Administrator Decl. ¶ 4.) After receiving the Class Information, the Claims Administrator updated the Class Information after

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

performing a search on National Change of Address database. (Claims Administrator Decl. ¶ 6.) On August 14, 2023 the Notice Packets were mailed to the Settlement Class Members by first-class U.S. mail, with pre-paid postage. (*Id*.)

No Settlement Class Members timely and completely asked to be excluded from the Settlement; there have been 0 objections. (Claims Administrator Decl. 8-9.)

In short, the notice procedures undertaken by the Claims Administrator constitute the best notice practicable under the circumstances, and fully complies with Rule 23 and the requirements of due process.

## V.    THE PROPOSED SETTLEMENT MERITS FINAL APPROVAL

The settlement of a class action requires court approval. Fed. R. Civ. P. 23(e). In determining whether to grant final approval, the Court must determine whether the proposed settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2)(C); *Staton v. Boeing Co.*, 327 F. 938, 952 (9th Cir. 2003). To assess the merits of a final settlement in a class action, courts "balance a number of factors," including "the strength of the Plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *see also Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). The Court considers the "settlement taken as a whole." *See Hanlon*, 150 F.3d at 1026.

Although the Court has broad discretion in making a final determination that a class-action settlement is fair, the Court's discretion is "limited to the extent necessary to reach a reasoned judgment that the [settlement] is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable, and adequate to all

concerned." *Officers for Justice*, 688 F.2d at 625. A presumption of fairness exists where "the settlement is recommended by class counsel after arm's-length bargaining." *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011) In considering whether to grant final approval of a class-action settlement, the Ninth Circuit has recognized "a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Synocor ERISA Litig.*, 516 F.3d 1095, 1011 (9th Cir. 2008). In the end, "[s]ettlement is the offspring of compromise; the question [that the court] addresses is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate[,] and free from collusion." *Hanlon*, 150 F.3d at 1027.

### A. The Proposed Settlement Is Presumed To Be Fair.

The Court should begin its analysis with a presumption that the proposed Settlement is fair and should be approved. "Settlements that follow sufficient discovery and genuine arms-length negotiation are presumed fair." *In re Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607, 610 (S.D. Cal. 2008) (citations omitted); *see Harris*, 2011 WL 1627973, at *8 ("An initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining."). Courts find that "parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 377 (9th Cir. 1995).

Here, the parties negotiated the proposed Settlement at arm's length with the assistance of an experienced mediator, Hon. S. James Otero. (Bainer Decl. ¶ 6.) Significant factual investigation and discovery allowed Class Counsel—who is experienced in wage-and-hour class-action litigation—to assess the strengths and weaknesses of the claims against Defendant and the benefit of the proposed Settlement. (*Id.*) During the course of the litigation, Class Counsel reviewed thousands of pages of documents produced by Defendant, including relevant

MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT

wage-and-hour policy documents, obtained a sampling of timekeeping and payroll records, and prepared a damages model based on analysis of the time and payroll data and information obtained from Defendant. (Bainer Decl. ¶ 3-5.) Plaintiffs and Class Counsel therefore had adequate information to gauge the value of the Settlement Class Members' claims and assess whether the proposed Settlement is fair, adequate, and reasonable. (*See* discussion *supra* Part II.B.) As discussed further below, Class Counsel supports the Settlement because it achieves a significant result for the Settlement Class Members, particularly in light of the risks of continued litigation. (*See, e.g.*, discussion *infra* Part V.B.3.)

### B. Relevant Criteria Support Final Approval of the Settlement.

In deciding whether to grant final approval of a class-action settlement, courts must determine whether it is "fair, reasonable, and adequate" after considering whether "(a) the class representatives and class counsel have adequately represented the class; (b) the proposal was negotiated at arm's length; (c) the relief provided for the class is adequate . . . ; and (d) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2). These factors are not exhaustive, however, and should be tailored to each case. *Staton*, 327 F.3d at 959; *see* Fed. R. Civ. P. 23(e)(2) 2018 advisory committee's note ("The goal of this amendment is not to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal."). Applied to this case, the relevant criteria support final approval of the proposed Settlement.

### 1.    Plaintiffs and Class Counsel Have Adequately Represented the Class.

Final approval is favored because Plaintiffs and Class Counsel conducted an adequate investigation and discovery prior to reaching a settlement. "A court is more likely to approve a settlement if most of the discovery is completed because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case." *Nat'l Rural Telecomms.*

*Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004). The greater the amount of discovery that has been completed, the more the parties have 'a clear view of the strengths and weaknesses of their cases." *Young*, 2007 WL 951821, at *4.

Plaintiffs conducted extensive investigation and discovery prior to mediation. (*See* discussion *supra* Part II.B.) Plaintiffs' counsel obtained documents and information from Defendant sufficient to realistically assess Plaintiffs' claims and proceed with class certification if necessary. (Bainer Decl. ¶ 3-4; *see also* discussion *supra* Part II.B.) Plaintiffs' counsel analyzed and evaluated Defendant's policy and procedure documents, time and payroll records, information from relevant witnesses, as well as conducting an independent investigation as described above. (Bainer Decl. ¶ 3-4; *see also* discussion *supra* Part II.B.) Based on the information and record developed through extensive investigation and discovery, Plaintiffs' counsel was able to act intelligently and effectively in negotiating the proposed Settlement. (Bainer Decl. ¶ 7; *see also* discussion *supra* Part II.B.)

Additionally, Class Counsel was able to adequately represent the class in negotiating the Settlement as a result of Class Counsel's experience in handling similar class actions. Reliance on such recommendations is premised on the fact that "parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *In re Pac. Enters. Sec. Litig.*, 47 F.3d at 378. Class Counsel has handled dozens of wage-and-hour class-action lawsuits in both state and federal courts. (*See* Bainer Decl. ¶ 8.) Through its investigation, review of discovery materials, litigation, and the mediation, Plaintiffs' counsel had an intimate understanding of the instant litigation and believes the Settlement is fair, adequate, and reasonable. (Bainer Decl. ¶ 7.)

### 2.    The Settlement Was Negotiated at Arm's Length.

Evidence that a settlement agreement is the result of genuine arm's length

MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT

bargaining with a private mediator after factual discovery also supports a conclusion that the Settlement is fair. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (2016) ("We put a good deal of stock in the product of an arms-length non-collusive, negotiated resolution."); *see also In re Apple Computer, Inc. Derivative Litig.*, No. C 06-4128 JF (HRL), 2008 WL 4820784, at *3 (N.D. Cal. Nov. 5, 2008) (mediator's participation weighs considerably against any inference of a collusive settlement. Here, the Settlement was reached after extensive negotiations, with the assistance of an experienced mediator, Hon. S. James Otero. The Parties continue to negotiate terms of Settlement after reaching the agreement in principle with Judge Otero. These discussions were at arm's length and non-collusive, and conducted by experienced class-action counsel. Plaintiffs were represented by seasoned class-action counsel who litigate wage-and-hour claims through certification and on the merits, and have considerable experience with those types of cases. (*See* discussion *supra* Part V.B.1.) Defendant was represented by Jones Day, a nationally recognized employment defense law firm. Therefore, these circumstances also favor a final determination that this Settlement is fair, adequate, and reasonable.

### 3.    The Relief Provided to the Class Is Adequate.

To determine whether the class relief is adequate, the Court should consider "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C).[1]

"An important consideration in judging the reasonableness of a settlement is the strength of the Plaintiffs' case on the merits balanced against the amount offered in the settlement." *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482,

---

[1] There are no separate agreements for the Court to consider in granting final approval of the proposed Settlement.

MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT

488 (C.D. Cal. 2010) (internal quotation mark omitted). Plaintiffs evaluated the claims in light of the risks of continued litigation in order to determine a reasonable range of class relief. Although Plaintiffs believes the class claims are strong, Defendant disputes liability and, except for settlement purposes, the appropriateness of class certification. Defendant has vigorously defended the action, and the related cases, and, absent settlement, would continue to do so. Plaintiffs recognizes the risks they face in proceeding with litigation, and that they may have encountered.

For example, although many courts have certified classes in wage-and-hour actions, some courts have disagreed, finding that wage and hour cases present too many individualized issues.[2] The risk of being denied class certification favors settlement, because when class certification is denied, there is little incentive for parties to proceed where individual damages are relatively small. *See, e.g.*, *In re Baycol Cases I & II*, 51 Cal. 4th 751, 758 (2011) (explaining that a dismissal of class claims is effectively the "death knell" of the case, despite survival of

[2] *See Duran v. U.S. Bank Nat'l Assoc.*, 59 Cal. 4th 1, 31 (2014) (reversing a verdict from a class trial); *Ali v. U.S.A. Cab Ltd.*, 176 Cal. App. 4th 1333, 1341 (2009) (affirming denial of certification because employees' declarations attesting to having taken meal and rest breaks demonstrated that individualized inquiries were required to show harm); *Campbell v. Best Buy Stores, L.P.*, No. LA CV12-07794JAK (SH1), 2013 WL 5302217, at *11-12 (C.D. Cal. Sept. 20, 2013) (following *Brinker* and denying certification of proposed off-the-clock and rest and meal break classes due to lack of uniform policy); *Jimenez v. Allstate Ins. Co.*, No. LA CV10-08486 JAK (FFMx), 2012 WL 1366052, at *22 (C.D. Cal. Apr. 18, 2012) (denying motion to certify meal and rest break classes based on employer's practice of understaffing and overworking employees); *Gonzalez v. Officemax N. Am.*, No. SACV 07-00452, 2012 WL 5473764, at *2 (C.D. Cal. Nov. 5, 2012) (same); *Brown v. Fed. Express Corp.,* 249 F.R.D. 580, 587-88 (C.D. Cal. 2008) (denying certification of driver meal and rest period claims based on the predominance of individual issues); *Kenny v. Supercuts, Inc.*, 252 F.R.D. 641, 645 (N.D. Cal. 2008) (denying certification on meal periods claim); *Blackwell v. Skywest Airlines, Inc.*, 245 F.R.D. 453, 467-68 (S.D. Cal. 2007) (declining to certify class action because individual issues predominated when different employee stations provided different practices with respect to meal periods).

16

individual claims).

Moreover, Plaintiffs would have to overcome Defendant's defenses on the merits, which include hotly litigated issues of federal preemption of these claims, in an ever-emerging area under the law. Accordingly, despite the numerous alleged violations, recovery is far from guaranteed and could only occur after years of costly litigation that is rife with risk. Defendants asserted and would have continued to assert, through certification, trial and the appellate process, legal and factual grounds to defend themselves. Defendants denied any wrongdoing associated with the alleged violations and, if litigation continued, would have vehemently opposed Plaintiff's claims, with almost limitless resources, at the certification, trial, and appellate stages.

The proposed Settlement in the amount of $3,999,999 is therefore reasonable when balanced against the strengths and weaknesses of Plaintiffs' claims. If the putative class is not certified, the value of Plaintiffs and the Class Members' individual cases would be reduced to a fraction of the Settlement value. Many Class Members would also be shut out of recovery for the wage-and-hour violations Plaintiffs contend that Defendant committed. Although Plaintiffs and their counsel strongly believe in the underlying merit of their claims, they recognize the challenges of proceeding.

Considering the costs, risks, and delay of trial and appeal, the effectiveness of the proposed method of distributing relief to the class, and the terms of the proposed award of attorneys' fees, the relief provided to the class is adequate.

### 4.    The Settlement Does Not Provide Preferential Treatment to Plaintiffs or Any Segment of the Class.

The fourth factor for the Court to examine is whether the proposed settlement provides preferential treatment to any class member. "[T]o the extent feasible, the plan should provide class members who suffered greater harm and who have stronger claims a larger share of the distributable settlement amount." *Hendricks v. StarKist Co.*, Case No. 13-cv-007290HSG, 2015 WL 4498083, at *7

(N.D. Cal. July 23, 2015). Here, the proposed Settlement poses no risk of unequal treatment of any Settlement Class Member. Each Settlement Class Member's Individual Settlement Payment is calculated on a pro rata basis based on his or her workweeks.

The Settlement also provides for an incentive award to each Representative Plaintiff in an amount not to exceed $10,000.00, subject to Court approval. As set forth in Plaintiffs' Motion for Attorneys' Fees and Costs and Service Awards, previously filed to be heard concurrently herewith, this modest payment is appropriate based on the substantial risk assumed by and the services undertaken by Plaintiffs on behalf of the Class Members. Furthermore, the Ninth Circuit has recognized that service awards to named Plaintiffs in class actions are permissible. *See Staton*, 327 F.3d at 977. Thus, the absence of any preferential treatment supports final approval.

### 5.    Class Members' Reaction to the Proposed Settlement.

In assessing the fairness, adequacy, and reasonableness of the Settlement, courts also consider the reaction of the class. *Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003). "It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to the class members." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528-29 (C.D. Cal. 2004).

This factor also favors final approval. To date no class members have requested to be excluded from or objected to the Settlement. (Claims Administrator Decl. ¶ 8-9.) Given the overall positive reaction from Settlement Class Members, final approval of the Settlement is appropriate.

## VI.    THE COURT SHOULD CERTIFY THE CLASS FOR SETTLEMENT PURPOSES ONLY

A party seeking to certify a class must demonstrate that she has met the

MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT

"four threshold requirements of Federal Rule of Civil Procedure 23(a): (i) numerosity; (ii) commonality; (iii) typicality; and (iv) adequacy of representation." *Levya v. Medline Indus., Inc.*, 716 F.3d 510, 512 (9th Cir. 2013). Once these prerequisites are satisfied, the Court must consider whether the proposed class can be maintained under at least one of the requirements of Rule 23(b). *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011). Plaintiffs, here, seeks certification pursuant to Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Given that the elements of liability need not be proven and for settlement purposes, the proposed class satisfies each of these requirements.

### A. The Proposed Class Is Sufficiently Numerous.

The numerosity requirement is satisfied when "joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The numerosity requirement is not tied to any fixed numerical threshold, but courts generally find the numerosity requirement satisfied when a class includes at least 40 members. *Rannis v. Recchia*, 380 F. App'x 646, 650-51 (9th Cir. 2010); *see also Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1121 (E.D. Cal. 2009) (numerosity presumed at 40 class members). A reasonable estimate of the number of purported class members is sufficient to meet the numerosity requirement. *In re Badger Mountain Irrigation Dist. Sec. Litig.*, 143 F.R.D. 693, 697 (W.D. Wash. 1992). Here, the proposed class consists of approximately 2000 persons. (Claims Administrator Decl. ¶ 11.) Thus, the class is sufficiently numerous so as to make joinder impracticable.

### B. Common Questions of Law and Fact Predominate.

The commonality requirement is also met for settlement purposes. In this regard, Plaintiffss are not required to show commonality on *every* factual and

---

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

legal issue; rather, "for purposes of Rule 23(a)(2), even a single common question will do." *Wal-Mart Stores, Inc.*, 564 U.S. at 359 (internal quotations and alterations omitted). Further, courts have found that "[t]he existence of shared legal issues with divergent factual predicates is sufficient, to satisfy commonality under Rule 23 as is a common core of salient facts coupled with disparate legal remedies within the class." *Smith v. Cardinal Logistics Mgmt. Corp.*, No. 07-2104 SC 2008 WL 4156364, at *5 (N.D. Cal. Sept. 5, 2008). Individualized or deviating facts will not preclude class treatment if most class members were subjected to a policy in a way that gives rise to consistent liability or lack thereof. *See Arrendondo v. Delano Farms Co.*, No. CV-F 09-1247 LJO DLB, 2011 WL 1486612, at *15 (E.D. Cal. Apr. 19, 2011).

Importantly, "whether a proposed class is sufficiently cohesive to satisfy Rule 23(b)(3) is informed by whether certification is for litigation or settlement. A class that is certifiable for settlement may not be certifiable for litigation if the settlement obviates the need to litigate individualized issues that would make a trial unmanageable." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 558 (9th Cir. 2019); *see also Amchem Prods.,* 521 U.S. 591, 618-20 (1997). Thus, where the matter is being settled, a showing of manageability at trial is unnecessary. *Id.*

Commonality is satisfied in this case. Plaintiffs contends that her and the Settlement Class Members' claims arise from common, uniform practices which involve common questions of law and fact, including but not limited to: (1) whether employees were not provided with timely meal and rest breaks as a result of the security checks; (2) as a result, whether Defendant willfully failed to pay all wages owed to employees at the time of separation, failed to provide accurate wage statements and maintain required records; and (3) whether Defendant committed these or other unfair and unlawful business practices in violation of Business & Professions Code § 17200.

MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT

As Plaintiffs contends Defendant's policies and practices, and the questions of law and fact they raise, apply uniformly to all Class Members, certification is appropriate for settlement purposes.[3]

### C. Plaintiffs' Claims Are Typical of Those of the Class.

"Like the commonality requirement, the typicality requirement is 'permissive.'" *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010). The typicality requirement is satisfied where the named Plaintiffs is a member of the proposed class and her claims are "reasonably coextensive with those of the absent class members," though "they need not be substantially identical." Fed. R. Civ. P. 23(a)(3); *Hanlon*, 150 F.3d at 1020; *Hanon v. Dataprods. Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). Typicality turns on "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named Plaintiffss, and whether other class members have been injured by the same course of conduct." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011) (quoting *Hanon*, 976 F.2d at 508).

Here, Plaintiffs' claims were based on allegations and theories common to and typical of the class as a whole because they arise from the same factual basis and are based on the same legal theories applicable to the other Class Members. Likewise, Plaintiffs alleged herein that they, like their fellow Flight Attendants, obtained monthly work assignments by a "bid" process wherein Flight Attendants bid on the grouping of monthly flight assignments they wished to work on. Plaintiffs alleged that, during these active flight duty days, Plaintiffs were responsible for reporting to their Base of Operations (in Plaintiffs' case, LAX airport), performing pre-check-in duties, servicing customers in-flight, and assisting

---

[3] The Ninth Circuit recently confirmed in *In re Hyundai & Kia Fuel Economy Litigation* that the relaxed predominance standard is met where a settlement concerns a "cohesive group of individuals [who] suffered the same harm in the same way because of the [defendant's] alleged conduct. 926 F.3d at 559. Because this is not a matter wherein "individual stakes are high and disparities among class members great," common questions predominate. *Id.*

with de-planing upon arrival. Most daily routes consisted of multiple flight legs, which would further require Plaintiff s and their fellow Flight Attendants to "turn over" the plane in between flight legs to prepare the plane for the next departure.

Plaintiff's theory of recovery for missed meal and rest periods arose from their allegation that, because of the nature of the Flight Attendant's required daily duties, and the limited time scheduled in between flight legs SkyWest Flight Attendants, including Plaintiff, were regularly required to work over four consecutive hours without receiving an opportunity to take an off-duty rest period and/or over six consecutive hours without receiving a thirty minute off-duty meal or rest period.

Additionally, Plaintiffs alleged and maintained that the wage statements provided to Plaintiffs and their fellow Flight Attendants identify the various formulaic components that were triggered during their pay period earning them compensation but failed to contain all information required pursuant to statute.

The proposed class thus meets the typicality requirement for settlement purposes.

### D. Plaintiffs and Her Counsel Adequately Represented the Settlement Class Members.

A class representative must be able to "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement is satisfied if (1) the proposed representative Plaintiffs do not have conflicts of interest with the proposed class, and (2) Plaintiffs are represented by qualified and competent counsel. *Hanlon*, 150 F.3d at 1020. There are no conflicts between Plaintiffs and their counsel and the Class Members. Plaintiffs have worked closely with their counsel throughout the case to ensure that the putative class is adequately represented. Moreover, Plaintiffs and their counsel have shown they will vigorously represent the interests of the Class Members and have sufficient resources to enable them to vigorously pursue the claims on behalf of the class.

MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT

Further, as described above, Plaintiffs' Counsel is experienced in wage-and-hour class litigation and are qualified to serve as class counsel. (*See* discussion *supra* Part V.B.1.)

### E. A Class Action Is a Superior Method of Adjudication.

Rule 23(b)(3)'s superiority requirement is satisfied where "classwide litigation of common issues will reduce litigation costs and promote greater efficiency," or where "no reasonable alternative exists." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234-35 (9th Cir. 1996). In the context of a class action settlement, "manageability is not a concern [because …] by definition, there will be no trial." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d at 556-67. With 1,930 Settlement Class Members, and in light of the predominance of common legal and factual issues, a class action is a superior method of adjudication in this context. Additionally, although the value of individual claims is not insignificant, the amount in controversy is not nearly enough to incentivize individual action. *See Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1176 (9th Cir. 2010). The class action device therefore provides the superior procedural vehicle to resolve this controversy.

Accordingly, the class should be finally certified for settlement purposes.

### VII. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully requests that the Court grant final approval of the Settlement. Defendant does not oppose Plaintiffs' request.


DATED: December 22, 2023        **THE BAINER LAW FIRM**


By:   /s/ Matthew R. Bainer
MATTHEW R. BAINER
Attorneys for Plaintiffs

MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT